IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

v.                             No. CR 14-0769 JB

FELIPPE JONES,

   Defendant.

## MEMORANDUM OPINION AND ORDER

   **THIS MATTER** comes before the Court on the Defendant's Second Stipulated Motion to Continue Sentencing Hearing, filed November 17, 2014 (Doc. 43)("Renewed Motion"). The Court held a hearing on October 24, 2014. The primary issue is whether the Court should continue Defendant Felippe Jones' sentencing hearing until June 2015 to allow him to finish school. Because Jones does not need additional time to prepare for his sentencing and instead seeks to delay sentencing for personal reasons, the Court will deny the Renewed Motion.

## FACTUAL BACKGROUND

   Jones pled guilty to one count of knowingly possessing and selling a stolen firearm, thereby violating 18 U.S.C. §§ 922(j) and 924(a)(2). See Plea Agreement, filed July 7, 2014 (Doc. 32). While on pretrial supervision, Jones began taking classes at the ITT Technical Institute in Albuquerque, New Mexico. He now seeks to postpone his prison sentence so that he can continue his classes.

**PROCEDURAL BACKGROUND**

The United States Probation Office ("USPO") disclosed Jones' Presentence Investigation Report ("PSR") on September 5, 2014. It filed two subsequent addendums on September 24, 2014, and on October 1, 2014. See Addendum to the Presentence Report (disclosed September 24, 2014); Second Addendum to the Presentence Report (disclosed October 1, 2014). Jones filed his objections to the PSR on September 30, 2014. See Defendant's Objections to Suggested Offense Levels, filed September 30, 2014 (Doc. 35).

On October 20, 2014, Jones filed a motion asking the Court to "continue sentencing, currently scheduled for October 24, 2014, for an additional 20 months." Defendant's Amended Stipulated Motion to Continue Sentencing at 1, filed October 20, 2014 (Doc. 39)("First Motion"). This continuance would push Jones' sentencing until after June 5, 2016, "which is Mr. Jones' projected graduation date" from ITT Technical Institute. First Motion at 1. As grounds for Jones' First Motion, he argued that he "has done very well while on pretrial supervision. He is in total compliance with his counseling requirements and is actively engaged in his individual counseling." First Motion at 1. Moreover, he explained that he "is enrolled in a 93 credit hours Drafting and Design Technology program at the ITT Technical Institute," which has caused him to incur "a very substantial financial obligation of $49,947.00." First Motion at 1-2. Jones included copies of: (i) his Enrollment Agreement, which evidences his financial investment and liability for his academic endeavor; (ii) his school transcripts; and (iii) an Honor Roll Award demonstrating his commitment to achieving academic success. See Enrollment Agreement at 1, filed October 20, 2014 (Doc. 39-1); ITT Transcript at 5-6, filed October 20, 2014 (Doc. 39-1); Honors Award at 7, filed October 20, 2014 (Doc. 39-1). In light of the above,

Jones asked the Court "to continue his sentencing until he finishes school or graduates." First Motion at 2.

On October 23, 2014, the Court denied Jones' First Motion without prejudice to Jones renewing his request for a continuance at the time of the sentencing hearing, which the Court had set for the following day. See Stipulated Order to Continue Sentencing Hearing, filed October 23, 2014 (Doc. 40)("Order"). The Court recognized that Jones had done well on pretrial supervision, enrolling and excelling in a two-year program at ITT Technical Institute. See Order ¶ 2, at 1. It observed that Jones "is ready and willing to face the consequences for his actions." Order ¶ 4, at 1-2. Because Jones was asking for such a long continuance, however, the Court modified the submitted order by striking the portions that granted the twenty-month continuance and writing on the Order that it needed to discuss the reason for the long continuance with the parties at the sentencing hearing and "to hear more about the Defendant and the case." Order at 2. The Court therefore denied the First Motion without prejudice to renewal at the hearing the following day. See Order at 2.

The next day, October 24, 2014, the Court convened for the scheduled sentencing hearing. See Transcript of Hearing (taken October 24, 2014)("Tr.").[1] The United States asserted: "I support the Defendant's request for a number of reasons." Tr. at 5:7-8 (Ramirez). The first reason, the United States said, was that Jones had done "remarkably well" in school. Tr. at 5:8-9 (Ramirez). The second reason, it said, was that Jones has undertaken a substantial financial obligation. See Tr. at 5:9-13 (Ramirez). The United States recognized that Jones' school costs accumulated to nearly $50,000, meaning that "he will not have the ability to repay that absent the education." Tr. at 5:14-16 (Ramirez). The United States also emphasized the

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

- 3 -

additional benefits to society from allowing Jones to complete school.  It stated that Jones will "be a much better candidate on supervision if he does possess the skills and the education to become successfully [able] to repay that debt that he is going to incur."  Tr. at 6:10-13 (Ramirez).

The Court acknowledged the reasons weighing against immediate sentencing, but noted that "incarceration is always disruptive in everybody's life."  Tr. at 7:8-9 (Court).  It asked how incarceration now would be more disruptive than incarceration after school.  See Tr. at 7:9-12 (Court).  Jones argued that, if he does not complete school in the agreed-upon time, "he would be ineligible for another loan."  Tr. at 7:15-18 (Mendoza).  The Court questioned whether Jones could accelerate his studies to finish quicker.  See Tr. at 8:3-4 (Court).  Jones stated that it would be difficult to do so because many of his required classes have prerequisite classes that he must take first.  See Tr. at 9:7-11 (Jones).

The Court explained that Jones had a right to a speedy trial and prompt sentencing.  See Tr. at 9:12-19 (Court).  It also recognized the public's interest in a speedy sentencing.  See Tr. at 10:10-14 (Court).  It questioned whether Jones' interest in a delayed sentencing outweighs the public's interest in a speedy sentencing.  See Tr. at 10:10-14 (Court).  United States Probation Officer Sami K. Geurts stated that she had never seen a court postpone a sentencing for two years.  See Tr. at 11:12-14 (Geurts).  She also raised the concern that housing Jones in a halfway house would be very expensive.  See Tr. at 11:15-22 (Geurts).  The Court took the motion under advisement.  See Tr. at 12:24-13:2 (Court).  It encouraged the parties to find a way to ease the burden on the USPO if the Court were to allow Jones to continue school.  See Tr. at 13:9-16 (Court).  It also directed Nicholas E. Mendoza, Jones' defense attorney, to discuss Jones' rights to a speedy trial and a prompt sentencing.  See Tr. at 13:21-24 (Court).

On November 17, 2014, Jones filed the Renewed Motion. He moves the Court, "upon the agreement of the parties, for an Order continuing sentencing for nineteen (19) months." Renewed Motion at 1. To support his Renewed Motion, Jones notes that the Court had "ordered defense counsel to go over the Defendant's rights to speedy sentencing with him" and to sign a waiver of such rights. Renewed Motion ¶ 2, at 1-2. See Waiver of Due Process Right to Speedy Sentencing, filed October 30, 2014 (Doc. 42)("Waiver"). Jones states that he signed the Waiver and filed it with the Court on October 30, 2014. See Renewed Motion ¶ 2, at 1-2. Additionally, Jones asserts that United States Probation Officer Sharla Koch devised a plan to defray the costs of Jones staying at a halfway house: "Mr. Jones shall be in the third-party custody of his mother, Ms. Julia Joe-Butz, under the authority and supervision of the U.S. Probation Office." Renewed Motion ¶ 3, at 2. Jones asserts that both USPO Koch and the United States agree with the plan. See Renewed Motion ¶¶ 6-7, at 2-3.

Finally, Jones argues that continuing sentencing until June 2016 "not only achieves the basic purposes of criminal punishment under the Sentencing Reform Act of 1984, such as deterrence, incapacitation, just punishment, and rehabilitation," but also complies with the purposes of 18 U.S.C. § 3553 (a)(2) by "reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, affording adequate deterrence to criminal conduct, protecting the public from further crimes of the defendant, and providing the defendant with needed educational or vocational training." Renewed Motion ¶ 8, at 3. Accordingly, Jones requests that the Court continue sentencing until he finishes school. See Renewed Motion at 3.

## LAW REGARDING RULE 32 AND GOOD CAUSE

Rule 32(b)(1) of the Federal Rules of Criminal Procedure instructs courts that they "must impose sentence without unnecessary delay." Fed. R. Crim. P. 32(b)(1).  After the probation officer has drafted the presentence report, "[t]he probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period." Fed. R. Crim. P. 32(e)(2).  Parties must, "[w]ithin 14 days after receiving the presentence report, . . . state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1).  A "court may, for good cause, change any time limits prescribed in" rule 32 or, "for good cause, allow a party to make a new objection at any time before sentence is imposed." Fed. R. Crim. P. 32(b)(2), (i)(1)(D).  Rule 45 of the Federal Rules of Criminal Procedure provides courts with authority to extend the time a party has to perform an act for good cause.  See Fed. R. Crim. P. 45(b)(1) ("When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion . . . .").

The Tenth Circuit has not adopted a definition for good cause under rule 32.  The Tenth Circuit has, however, adopted a definition for good cause under rule 16 of the Federal Rules of Civil Procedure in relation to the amendments of scheduling orders.  Because both rules use the same phrase -- good cause -- a court is warranted in concluding that Congress intended that the same meaning applies to this phrase in each statute.  Courts generally presume that a drafter of a statute intends identical language in statutes with similar purposes to have the same meaning.  See Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 547 U.S. 71, 85-86 (2006)(Stevens, J.).  Additionally, "[t]he rules of statutory construction apply to the Federal Rules . . . ." In re Kubler,

2012 WL 394680, at *11 (D.N.M. Jan. 25, 2012)(Browning, J.).  Accord Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)(applying the expressio unius est exclusio alterius canon when interpreting rule 9(b) of the Federal Rule of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure.").

"Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010)(Browning, J.).  Accord Gerald v. Locksley, 2011 WL 3510845, at *13-14 (D.N.M. Aug. 1, 2011)(Browning, J.).  The Tenth Circuit has interpreted civil rule 16 as imposing a "good cause" standard to untimely motions to amend when a scheduling order governs the case.  Minter v. Prime Equip. Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).  "This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  Minter v. Prime Equip. Co., 451 F.3d at 1205 n.4.

The Court has previously stated that the civil rule 16(b) good-cause inquiry focuses on the diligence of the party seeking to amend the scheduling.  See Walker v. THI of N.M. at Hobbs Ctr., 262 F.R.D. 599, 602-03 (D.N.M. 2009)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672505, at *2-3 (D.N.M. Sept. 29, 2009)(Browning, J.); Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., 2007 WL 2296955, at *3 (D.N.M. June 5, 2007)(Browning, J.).

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a).  Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.  In other words, this court may "modify the schedule on a showing of

> good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997)(citations omitted), aff'd on other grounds, 129 F.3d 116 (4th Cir. 1997).

In In re Kirkland, 86 F.3d 172 (10th Cir. 1996), the Tenth Circuit dealt with the definition of "good cause" in the context of civil rule 4(j). The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

86 F.3d at 175 (emphasis omitted)(internal quotation marks omitted)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir.1987)). The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'" In re Kirkland, 86 F.3d at 175.

Like with trials, a defendant may move to continue his or her sentencing hearing. See United States v. Peden, 891 F.2d 514, 519 (5th Cir. 1989). Appellate courts review a district court's denial of a motion for a continuance -- whether it seeks to continue the trial or the sentencing hearing -- for an abuse of discretion. See Ungar v. Sarafite, 376 U.S. 575, 589 (1964); United States v. Peden, 891 F.2d at 519; United States v. Gallo, 763 F.2d 1504, 1523 (6th Cir. 1985); Bowling v. Parker, 2012 WL 2415167, at *33 (E.D. Ky. June 6, 2012)(Thapar, J.). Denying a defendant's motion for a continuance "amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." United States v. King, 127 F.3d 483, 486-87 (6th Cir. 1997)(internal quotation marks omitted)(quoting United States v. Gallo, 763 F.2d at 1523). See Bowling v.

Parker, 2012 WL 2415167, at *33.  "To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense."  United States v. Gallo, 763 F.2d at 1523.  See United States v. Reynoso, 433 F. App'x 313, 314 (5th Cir. 2011)(concluding that the district court did not "abuse its discretion in denying [the defendant's] motion to continue" because the defendant could not show that the court's denial caused him prejudice); United States v. Mitchell, 744 F.2d 701, 704 (9th Cir. 1984); United States v. Moreno, 933 F.2d 362, 371 (6th Cir. 1991)(stating that a defendant must show actual prejudice).  A defendant demonstrates "actual prejudice" by showing that a continuance would have made relevant witnesses available or added something to the defense.

    The Court permitted a continuance in United States v. Chapman.  See 2012 WL 1132509, at *4-5 (D.N.M. March 19, 2012)(Browning, J.).  There, the defendant moved to continue her sentencing so that she could file objections to the presentence investigation report.  See 2012 WL 1132509, at *1-2.  She argued that she needed time to gather her financial information, which would be "helpful in permitting the Court to decide whether to vary downward on her sentence and to tailor her conditions of supervised release appropriately."  2012 WL 1132509, at *2.  She also stated that she needed to obtain information on her psychological state, which she alleged might permit a variance.  See 2012 WL 1132509, at *1-2.  Because of the difficulty and time it would take to compile her financial information and to secure a psychological evaluation, the Court determined that the defendant had a reasonable basis for noncompliance with the time specified.  See 2012 WL 1132509, at *4-5.  The Court concluded that the defendant presented good cause to continue the sentencing and granted the motion in part to "give [the defendant] a full opportunity to present her arguments regarding an appropriate sentence."  2012 WL 1132509, at *4.  Moreover, "[t]he delay [was] relatively short."  2012 WL 1132509, at *5.  The

Court did not, however, grant the defendant a continuance for the amount of time she requested. See 2012 WL 1132509, at *5. It granted her a continuance for the time that the Court thought was necessary to compile the necessary information. See 2012 WL 1132509, at *5.

## ANALYSIS

Rule 32 allows the court to change its prescribed time limits if Jones shows good cause. See Fed. R. Crim. P. 32(b)(2), (i)(1)(D). See also Fed. R. Crim. P. 45(b)(1) (providing courts with authority to extend the time a party has to perform an act for good cause). To show good cause, Jones must show that he cannot meet scheduling deadlines despite "diligent efforts." Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d at 1313. See Minter v. Prime Equip. Co., 451 F.3d at 1205 n.4. While the Court applauds Jones for attempting to obtain an education, it concludes that this reason alone does not constitute good cause to delay sentencing until June of 2016.

Unlike in United States v. Chapman, Jones does not seek a continuance so that he may gather information that might affect the sentence that the Court ultimately imposes. See United States v. Chapman, 2012 WL 1132509, at *4-5. He does not contend that he cannot meet the Court's scheduling orders; he already filed his objections to the PSR. See Objections at 1. Accordingly, Jones can comply with the court's scheduling orders. He merely would rather postpone the court's sentencing to better fit his schedule. The Court concludes that Jones' convenience does not constitute good cause warranting a continuance.

Allowing a continuance on these grounds is not fair to other defendants who would likewise want to carry out various activities before fulfilling their sentence. A prison sentence is not supposed to be convenient to defendants. The purposes behind criminal sentencing are "retribution, deterrence, incapacitation, and rehabilitation." Tapia v. United States, 131 S. Ct.

2382, 2387 (2011)("[A] court must fashion a sentence 'to achieve the[se] purposes . . . to the extent that they are applicable' in a given case.")(quoting 18 U.S.C. § 3551(a)).  Were the Court to find good cause upon a showing of inconvenience, nearly any criminal defendant could secure a continuance of his or her sentencing hearing.  This delay in punishment would be unfair to the public, which has an interest in speedy justice just as criminal defendants do.  Allowing criminals to delay their sentence so they can fulfill their personal goals defeats the goals of providing deterrence and retribution.  It also fails to incapacitate persons from marketing stolen firearms, which makes it easier for criminals to purchase prohibited weapons.  Preventing such access to firearms was one of Congress' key goals in passing 18 U.S.C. §§ 922 and 924, the provisions to which Jones pled guilty.  See Huddleston v. United States, 415 U.S. 814, 824-29 (1974); United States v. Green, 544 F.2d 746, 747-48 (4th Cir. 1976)(per curiam).  Accordingly, to accomplish the goals of sentencing, the Court cannot properly allow Jones to postpone his sentencing for nearly two years.

The Court's denial is not an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay."  United States v. King, 127 F.3d at 486-87 (internal quotation marks omitted)(quoting United States v. Gallo, 763 F.2d at 1523).  Unlike cases in which defendants move to continue their trial to prepare a defense, Jones does not ask the Court to postpone his sentencing so that he may investigate certain evidence or gather facts that would potentially reduce his sentence.  Instead, he asks the Court to delay sentencing for personal reasons.  Denying his Motion, therefore, does not harm his defense or his likelihood of securing a lower sentence.

The Court is not adverse to playing ball with defendants to get their house in order to serve a prison sentence.  But two years is just too long.  No one disputes the value to Defendants

of getting an education and getting jobs; but delaying sentencing for two years may undermine some of the very purposes of sentencing.  If the Court were to grant this Renewed Motion, it would be inviting other defendants to delay their sentencing for personal reasons.  In the end, the Court and society -- not the defendant -- should decide when a defendant should be sentenced. Consequently, the Court denies his Motion.

**IT IS ORDERED** that the Defendant's Second Stipulated Motion to Continue Sentencing Hearing, filed November 17, 2014 (Doc. 43), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Elaine Y. Ramirez
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Nicholas E. Mendoza
Corrales, New Mexico

*Attorneys for the Defendant*